David Joseph Macher
Attorney at Law
State Bar No. 134205
25096 Jefferson Avenue, Suite B
Murrieta, California 92562
951-677-7431 [office]
951-677-3937 [facsimile]
dmacher@verizon.net

Attorney for Defendant
Harold G. Meza, Jr.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff, | ) Case No. ED CR 06-63-VAP |
| | ) |
| v. | ) **SENTENCING POSITION OF** |
| | ) **DEFENDANT HAROLD MEZA** |
| **HAROLD G. MEZA, JR.,** | ) |
| Defendant. | ) Date: October 4, 2010 |
| | ) Time: 9:00 a.m. |

# TABLE OF CONTENTS

Table of Authorities .................................................................... ii

List of Exhibits ......................................................................... iii

Defendant Harold Meza Sentencing Position ............................... 1

I.

Introduction .............................................................................. 1

II.

The Sentencing Guidelines Calculation ..................................... 2

III.

The Court Should Impose a Below-Guidelines Sentence ............. 4

IV.

A Below Guidelines Sentence Is Consistent With the Title 18 U.S.C. Section 3553 Sentencing Objectives ................................................... 7

V.

A Below Guidelines Sentence Will Not Result in Unwarranted Sentencing Disparities as Argued by the Government ..................................... 8

Conclusion .............................................................................. 10

# TABLE OF AUTHORITIES

## Cases

*Gall v. United States*........................................................4

(2007) 552 U.S. 38 [128 S.Ct. 586, 169 L.Ed.2d 445]

*Kimbrough v. United States*.................................................4

(2007) 552 U.S. 85 [128 S.Ct. 558, 169 L.Ed.2d 481]

*Rita v. United States*........................................................4

(2007) 551 U.S. 338 [127 S.Ct. 2456, 168 L.Ed.2d 203]

*United States v. Booker*.....................................................4

(2005) 543 U.S. 220 [125 S.Ct. 738, 160 L.Ed.2d 621]

*United States v. Carty*.......................................................5

(9th Cir. 2008) 520 F.3d 984 ................................................5

## Statutes

18 U.S.C. § 371 ...............................................................2

18 U.S.C. § 3553 .......................................................4, 5, 7, 8

## United States Sentencing Guidelines

§ 2B1.1 ........................................................................2

§ 3B1.1 ........................................................................2

§ 4A1.2 ........................................................................2

§ 4A1.3 ........................................................................3

## Other Authorities

Shakespeare, 1 Henry IV ....................................................3

# EXHIBITS LIST

Letter by Melquiades "Mike" Ortiz ......................................................... 11

Letter by Gary Fincher ........................................................................ 12

Letter by Donald Loomis ..................................................................... 13

Loomis Form DD214 ........................................................................... 15

Explanation of PTSD by Matthew T. Tull, Ph.D. ................................. 16

Letter by Aragon ................................................................................ 18

Letter by Mario Garcia ....................................................................... 19

Letter by Alex and Carmen Hernandez ............................................... 20

Letter by Ray and Liz Fuentes ........................................................... 21

1

## DEFENDANT MEZA'S SENTENCING POSITION

Defendant Harold G. Meza, Jr., by and through his attorney of record, David Joseph Macher, respectfully submits his sentencing memorandum. The position is based upon the following memorandum of points and authorities, the letters attached as exhibits, the Presentence Investigation Report, probation sentencing recommendation letter, the files and records in this case, and on such additional argument and evidence as may be submitted at the time of the sentencing hearing.

## I.

## INTRODUCTION

In an indictment filed on August 4, 2006, Harold Meza and Karla Preciado were charged with conspiracy to make false statements in documents submitted to HUD for financing the sale of six different properties in violation of 18 U.S.C. section 371.  (Count 1.)  The codefendants were also charged with submitting false writings to HUD in violation of 18 U.S.C. section 1001.  (Counts 2 to 7.)

On May 10, 2010, Harold Meza pleaded guilty to count one of the indictment pursuant to a plea agreement reached with the government.  The parties stipulated the amount of the loss was $486,474.00.  Both sides reserved the right to seek guidelines adjustments or departures.

On August 20, 2010, the Presentence Investigation Report was disclosed to the parties.  Counsel for Meza filed a request to correct some minor errors in the report.  On September 9, 2010, a Revised Presentence Investigation Report incorporating the corrections was disclosed.  At this point, Mr. Meza has no objections to the report.

## II.

## THE SENTENCING GUIDELINES CALCULATION

In the plea agreement, the parties stipulated to a base offense level of 6 (USSG, § 2B1.1(a)(2)), with a 14-level increase for the amount of the loss (USSG § 2B1.1(b)(1)). In the Presentence Investigation Report, an additional 2-level increase is recommended for Mr. Meza's role in the offense (USSG § 3B1.1(c)). In the plea agreement, the government agreed to recommend a 3-level reduction in the offense level provided Mr. Meza demonstrated acceptance of responsibility. The adjusted offense level is therefore 19. The Presentence Investigation Report calculates Mr. Meza's criminal history as category III. For category III and an adjusted offense level 19, the Guidelines range is 37-46 months. The government concurs in this assessment.

The criminal history calculation is based upon criminal convictions in state court that occurred on March 30 and May 25, 2006. The conspiracy in this matter is alleged to have started in approximately May 1999 and ended on July 22, 2002. The convictions upon which the criminal history determination is based, then, concern conduct that took place after the end of the conspiracy.

According to the Guidelines, a "'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." (USSG § 4A1.2(a)(1).) The Guidelines consider a conviction for conduct subsequent to the present offense in calculating a defendant's criminal history category: "A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense." (Commentary to § 4A1.2.)

1    This is a paradox: the Guidelines count as a "prior sentence" a term of
2    incarceration imposed after the offense at issue.   In other words, what is
3    subsequent in time is nonetheless considered to be prior.  This feature of the
4    law—to turn black into white, day into night, and the future into the past—no
5    doubt entered into Falstaff's description of the law to Prince Hal as "Old
6    father Antic the law."   (Shakespeare, 1 Henry IV act 1, scene 2, line 59.)
7    While the Guidelines may call for considering the later terms of imprisonment
8    in determining Mr. Meza's criminal history category, the result overstates Mr.
9    Meza's criminal history at the time of the present offense.   A downward
10   departure is therefore appropriate.

11   The standard for a downward departure is established by the
12   Guidelines: "If reliable information indicates that the defendant's criminal
13   history category substantially over-represents the seriousness of the
14   defendant's criminal history or the likelihood that the defendant will commit
15   other crimes, a downward departure may be warranted.   (USSG §
16   4A1.3(b)(1).)  Both prongs of this standard are applicable here.

17   First, the use of after-the-fact convictions to establish Mr. Meza's
18   criminal history overstates the seriousness of that history.  At the time of the
19   conspiracy for which the court will impose sentence, Mr. Meza was a retired
20   veteran who had served for 20 years in the United States Air Force.  At that
21   point in his life, Mr. Meza had no criminal convictions.  To assess Mr. Meza's
22   culpability by using later convictions to establish his criminal history category
23   is, to use a familiar analogy, to view him from the wrong end of the telescope.
24   The court should consider the criminal history category as category one.

25   Second, there is no reasonable likelihood that Mr. Meza will commit
26   crimes in the future.  As related at length in the Presentence Investigation
27   Report, Mr. Meza has turned his life around.  With the help of the Veteran's
28   Administration and fellow Vietnam veterans, Mr. Meza has entered into

**DEFENDANT MEZA SENTENCING POSITION**                                          3

intensive treatment and therapy for Post-Traumatic Stress Disorder [PTSD]. He has demonstrated commitment to the program and to helping his fellow veterans.   Mr. Meza is no threat to return to real estate or any other profession where he could take financial advantage of a position of trust.

For both of these reasons, the court should make a downward departure in calculating Mr. Meza's criminal history category and conclude he comes within category one.  For category one with an adjusted offense level of 19, the Guidelines range is 30-37 months.

### III.

### THE COURT SHOULD FOLLOW THE PROBATION OFFICER'S RECOMMENDATION AND IMPOSE A BELOW GUIDELINES SENTENCE.

As the court is well aware, in *United States v. Booker* (2005) 543 U.S. 220 [125 S.Ct. 738, 160 L.Ed.2d 621], the Supreme Court held the Sentencing Guidelines are advisory rather than mandatory.  The Guidelines provide "a rough approximation of sentences that might achieve § 3553(a)'s objectives." (*Rita v. United States* (2007) 551 U.S. 338 [127 S.Ct. 2456, 168 L.Ed.2d 203].)  Nevertheless, district court judges are at liberty to impose a non-Guidelines sentence for any number of reasons, such as a decision a case simply merits a different sentence. (*Ibid.*)

Following the high court's decisions from *Booker* through *Gall v. United States* (2007) 552 U.S. 38 [128 S.Ct. 586, 169 L.Ed.2d 445] and *Kimbrough v. United States* (2007) 552 U.S. 85 [128 S.Ct. 558, 169 L.Ed.2d 481], the Ninth Circuit summarized the Supreme Court's spate of Guidelines decisions as follows, in relevant part:

(1) District courts have a statutory duty to "impose a sentence sufficient, but not greater than necessary" pursuant to 18 U.S.C. section 3553(a) and (a)(2).

(2) A sentencing hearing should begin with an accurate calculation of the applicable Guidelines range.

(3) Following argument by the parties, the court should consider the section 3553(a) factors "to decide if they support the sentence suggested by the parties . . ."

(4) "The district court may not presume that the Guidelines range is reasonable."

(5) The court must make an individualized sentencing decision based upon the facts.

(6) In the event the court decides upon a sentence outside the Guidelines, the court must consider the extent of the deviation and any justification for the sentence is compelling enough to support the variance.

(7) "Once the sentence is selected, the district court must explain it sufficiently to permit meaningful appellate review." (*United States v. Carty* (9th Cir. 2008) 520 F.3d 984, 991-992.)

In this case, Mr. Meza requests the court impose a sentence below the Guidelines range of 37-46 months.  Consistent with the probation officer's recommendation (PSI ¶ 137), the request for a non-Guidelines sentence is grounded upon "the history and characteristics of the defendant . . ." (18 U.S.C., § 3553(a)(1).)

The Presentence Investigation Report and the sentencing recommendation succinctly describe the reasons for a sentence below the Guidelines range.  Mr. Meza served his country honorably for 20 years in the United States Air Force.  (PSI ¶ 60, 93-95.)  His life went off the rails following a "triggering event" at a Christmas party in December 1995 when he was—for the first time ever—thanked for his service in Vietnam.  (PSI ¶ 72.)  Mr. Meza sought help with the demons unleashed by the incident, but was told to deal with it on his own.  (*Ibid.*)

Following his discharge from active duty in 1988, Mr. Meza did not know what to do with his life.  At the age of 40, Mr. Meza was for the first time confronted with life outside the structured environment of the military. He began to engage in "really bad behavior" that eventually ended his marriage. (PSI ¶ 61.)  From 1995 until his imprisonment in 2006, Mr. Meza abused alcohol on a daily basis. (PSI 79.)  The substance abuse can readily be seen as a form of self-medication—an effort to avoid the traumatic events that resulted in PTSD. (PSI p. 14, fn. 4 [alcohol abuse is a form of avoidance, a way to hide from the trauma].)

The futility of self-medication is obvious to anyone with long experience in the criminal justice system.  Self-medication failed Mr. Meza, just as it has failed untold others.  Mr. Meza fell from a personal pinnacle as a decorated master sergeant in a responsible position as superintendent of combat plans (PSI ¶ 93, Recommendation p. 5), to the crimes charged in the present matter, additional fraud offenses punished in state court, and a personal nadir as a prisoner in the custody of the California Department of Corrections (PSI ¶ 41-45).

Fortunately, an insightful parole agent pushed Mr. Meza to give the Veteran's Administration another chance.  (PSI ¶ 72.)  Since November 2008, Mr. Meza has, with the help of the Veteran's Administration and fellow veterans, turned his life around.  (Recommendation p. 6.)  Mr. Meza has given up self-medication, embraced therapy, and returned to work. (*Ibid.*)

Several of Mr. Meza's peers in treatment at Loma Linda have written to the Court to express their support for him.  These men include Melquiades Ortiz, a Vietnam combat veteran and retired Los Angeles County Deputy Sheriff; Gary Fincher, a Vietnam veteran and retired university administrator; and Donald Loomis, an Army veteran who served as a helicopter pilot in

Vietnam.[1]   All three men attest to Mr. Meza's good character and his progress in therapy.

IV.

**A BELOW GUIDELINES SENTENCE IS CONSISTENT WITH THE TITLE**

**18 U.S.C. SECTION 3553 SENTENCING OBJECTIVES.**

By following the recommendation of the probation officer and granting Mr. Meza five years probation with the first 12 months in a home detention program, the Court will "impose a sentence sufficient, but not greater than necessary" achieve the goals of sentencing.  (18 U.S.C. § 3553(a).)

Five years of probation with 12 months of home detention is sufficient punishment "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . ."  (18 U.S.C. § 3553(a)(2)(A).)   The government is right to decry mortgage fraud as a serious problem.  (Sentencing Memorandum at p. 6.)  However, given Mr. Meza's circumstances, there is no need to deter him from future crimes of this nature.  A lengthy period of probation with a year of home confinement is punishment enough in this case in light of Mr. Meza's character and background.

The recommended sentence will "protect the public from further crimes of the defendant . . ."  (18 U.S.C. § 3553(a)(2)(C).)  Simply stated, Mr. Meza is not a risk to reoffend.  He has turned away from crime and substance abuse to recovery and treatment.  With a strong support group in place with family and fellow veterans, Mr. Meza will not engage in any theft in the future.

The recommended grant of probation with 12 months of home confinement will "provide the defendant with needed educational or

---

[1] Mr. Loomis insisted his letter be accompanied by a copy of his DD214 separation papers and a brief explanation of PTSD written by Matthew Tull, a psychologist at the University of Mississippi Medical Center.

vocational training, medical care, or other correctional treatment in the most effective manner . . ." (18 U.S.C. § 3553(a)(2)(D).) At this point, Mr. Meza is well established in the VA recovery program. He is working at the hospital and assisting fellow veterans. Mr. Meza's surest path to recovery is to remain within his current treatment regime.

Yes, as the government points out, the Bureau of Prisons can provide Mr. Meza with some treatment. (Sentencing Memorandum at p. 7.) Be that as it may, there are no guarantees such treatment would be timely, or that the same levels of trust and confidence could be established within a prison environment. In any case, Mr. Meza's strong support system could not follow him to the Bureau of Prisons.

Finally, the recommended sentence is the best means to ensure payment of restitution. (18 U.S.C. § 3553(a)(7).) Mr. Meza's income is modest, but it is the only source he has for restitution. Sending him to the Bureau of Prisons would stop even this modest repayment to the government.

For all of the foregoing reasons, the recommended sentence is adequate to satisfy the purposes of sentencing.

## V.

## A BELOW GUIDELINES SENTENCE WILL NOT RESULT IN UNWARRANTED SENTENCING DISPARITIES AS ARGUED BY THE GOVERNMENT.

The government urges the Court to impose a Guidelines sentence based upon the need to avoid unwarranted sentence disparities. (Sentencing Memorandum at p. 6.) This concern derives from 18 U.S.C. section 3553, subdivision (a)(6): "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. . ." The government points out Ms. Preciado was

1   less culpable, pled guilty at an early stage of the proceedings, and agreed to
2   cooperate. (Sentencing Memorandum at p. 6.) Because Mr. Meza is more
3   culpable, the government contends he should receive a term of imprisonment
4   rather than home confinement. (*Id.* at pp. 6-7.)

5       The contention merits a detailed response. First, probation officer Mairi
6   Cervantes wrote the sentencing recommendations for both Mr. Meza and
7   Ms. Prediado. This is relevant because Ms. Cervantes was familiar with the
8   facts and with both defendants. She did not perceive any disparity in
9   sentencing in making her recommendations.

10      Second, the probation officer recommended 12 months of home
11  confinement for Mr. Meza rather than the 8 months imposed on Ms.
12  Prediado. The disparate periods of confinement eliminate any unwarranted
13  disparity in sentencing.

14      Third, the probation officer recommended a below-Guidelines sentence
15  for Mr. Meza on the basis of his character and history rather than the facts of
16  the crimes. Character is not fungible, and cannot be quantified. As has been
17  explained, Mr. Meza is a retired military veteran who served in Vietnam and
18  suffers from PTSD. After a period of criminal behavior and incarceration, Mr.
19  Meza is well on the way to recovery with the help of the Veterans
20  Administration and fellow Vietnam veterans. Because of his long, honorable
21  service and his efforts at rehabilitation, Mr. Meza should receive a below-
22  Guidelines sentence.

23      Ms. Prediado may well have been less culpable on the facts. Perhaps
24  her below-Guidelines sentence reflected this reduced culpability, as well as
25  her cooperation. To compare a below-Guidelines sentence imposed on the
26  basis of character and history with a like term founded upon lesser liability
27  and cooperation is to weigh apples against oranges. Viewed in this light, the
28

recommended sentence in this matter would not result in any unwarranted sentencing disparity.

## CONCLUSION

Mr. Meza respectfully requests the Court follow the recommended sentence and place him on five years of probation with the first 12 months in a home detention program.

Dated: September 20, 2010.

Respectfully submitted,

David Joseph Mac̄her
Attorney for Defendant
Harold G. Meza, Jr.

Melquiades "Mike" Ortiz

September 8, 2010


Honorable Judge Phillips


Dear Judge Phillips, my name is Melquiades "Mike" Ortiz, I am a Vietnam combat veteran, and as a volunteer, I facilitate a Writing Group at the VA Loma Linda Healthcare System (VA Hospital,) of which Mr. Harold G. Meza Jr. has being a member for approximately two years.  I also belong to several committees, that are involved in the creation and implementation of programs and therapies for the benefit of the Veterans being treated at this facility.  Mr. Meza is also involved in some of these committees.

I was a member of the Los Angeles County Sheriff's Department for over twenty-eight years, and I retired in 1997.  In my last assignment, my duties were as the training and scheduling Senior Deputy on the Early Morning Shift at the Inmate Reception Center of the Los Angeles Main County Jail.

I was trained as an Ethics and Integrity Facilitator, and was a line supervisor, responsible for overseeing the processing of thousands of inmates being processed through the Inmate Reception Center (IRC) to the housing section of the Main County Jail (MCJ.)

Part of my responsibilities included counseling, training, and preparing our Deputies, before their transfer to their patrol assignments.

Through my experience and training, I have come to understand people, and I believe Mr. Meza to be a good person.  I write this letter of reference for Mr. Meza, hoping the Court will be lenient with his sentence.


Sincerely,

Melquiades "Mike" Ortiz

(909) 229-9488

Retired Los Angeles County Senior Deputy/Inmate Reception Center

August 1969/December 1997

11

September 1, 2010

Gary Fincher
36547 Ranch House St
Murrieta, CA  92563
Phone:  951-239-0827

To Whom It May Concern

Subject:  Recommendation for Harold Meza

I am writing this letter in support of Harold Meza.  I am a retired University administrator with a master in counseling.  I am also a Vietnam Veteran and met Harold in group counseling at the VA in Loma Linda. When I met him, nearly two years ago, he seemed shy and reserved.  In these two years he has come a long way.  He now contributes, encourages other vets, and he is genuinely concerned for his personal growth as well as others.  He seems to always see the good in people.  He is involved with many functions in the VA.  He wants to help others and discourages others from being negative.  He is friendly, caring, kind and is a gentleman.  He is a good person and should be considered a positive citizen in his personal encounters.  If I can assist Harold for further consideration please contact me.

Sincerely

Gary Fincher

12

September 9 2010

Dear Judge Phillips,
I have known Harold Meza for a little over two years and found him to be a man of honor, dignity and courage.

He spent a twenty plus year career serving our country in the United States Air Force and retired as a Senior NCO, ( Non-comissioned Officer)..He acquired PTSD, ( Post Traumatic Stress Disorder), as a result of that service and is currently being treated for PTSD at the Loma Linda Veterans hospital in Loma Linda, California.

I met him when he started attending the Poetry Writing Group which I have belonged to for an excess of five years.

In this group we work very hard at writing about our pain and symptoms, and the devastation of PTSD and how that has impacted our lives.  It has been seen that writing about this chronic, debilitating, Neuropsychiatric disability is one of the paths to recovery.

PTSD is completely incurable and the term Recovery as it applies to PTSD is used to demonstrate that we are recovering from all the terrible things this disorder can do to the human psyche.

It distorts one's judgment.  It causes severe anxiety/panic attacks.  PTSD can bring on terror filled nightmares which harm our ability to sleep and therefore become easily tired and irritable.

We have great difficulty having meaningful relationships with most anybody and alienate our families, friends, and co-workers.  We can become hyper-vigilant and afraid of even the most mundane contacts whether in a grocery store or riding elevators.

The biggest difficulty for most Veterans having PTSD is getting into treatment and Harold has shown an extreme amount of courage in doing so.  I have been a patient at Loma Linda VA hospital since 1991 and would not be alive today were it not for the incredible treatment I have received there over the last twenty years and with his continuing treatment and participation in his own recovery I think Harold will have, and is having, significant changes in his life all of which are to the betterment of everything he does.

I don't know any details of what he's been convicted of but I implore you Judge Phillips to give him every possible favorable consideration when he appears before you for sentencing.

Thank You,
Most Sincerely,

13

Donald Loomis
CWO-2 USAR

12181 brixton Court
Moreno Valley, Ca.
92557
haggiez@verzon.net
951-247-3828

THIS IS AN IMPORTANT RECORD
SAFEGUARD IT.

| PERSONAL DATA | 1. LAST NAME FIRST NAME MIDDLE NAME<br>LOOMIS, DONALD GUY | 2. SERVICE NUMBER<br>W3 157 124 | | 3. SOCIAL SECURITY NUMBER<br>536 \| 44 \| 5919 |
|---|---|---|---|---|
| | 4. DEPARTMENT, COMPONENT AND BRANCH OR CLASS<br>ARMY USAR AVN | 5a. GRADE, RATE OR RANK<br>CW2 | 5b. PAY GRADE<br>W-2 | 6. DATE OF RANK<br>DAY 1  MONTH AUG  YEAR 68 |
| | 7. U. S. CITIZEN<br>☒ YES  ☐ NO | 8. PLACE OF BIRTH (City and State or Country)<br>ALBION, MICH | | 9. DATE OF BIRTH<br>DAY 9  MONTH SEP  YEAR 45 |

| SELECTIVE SERVICE DATA | 10a. SELECTIVE SERVICE NUMBER<br>NA | 10b. SELECTIVE SERVICE LOCAL BOARD NUMBER, CITY, COUNTY, STATE AND ZIP CODE<br>NA | 10c. DATE INDUCTED<br>DAY  MONTH  YEAR<br>NA |
|---|---|---|---|

| TRANSFER OR DISCHARGE DATA | 11a. TYPE OF TRANSFER OR DISCHARGE<br>RELIEVED FROM ACTIVE DUTY | | 11b. STATION OR INSTALLATION AT WHICH EFFECTED<br>FT DIX NJ | |
|---|---|---|---|---|
| | 12. REASON AND AUTHORITY<br>SEC XI AND SEC XIV CH 3 AR 635-100 SPN 612<br>AND DA MSG 231630Z FR CINCUSAREUR DTD 23 OCT 69 | | | 12a. EFFECTIVE DATE<br>DAY 6  MONTH FEB  YEAR 70 |
| | 13. LAST DUTY ASSIGNMENT AND MAJOR COMMAND<br>SF DET (ABN) EUROPE | 13a. CHARACTER OF SERVICE<br>HONORABLE | | 13b. TYPE OF CERTIFICATE ISSUED<br>NONE |
| | 14. DISTRICT, AREA COMMAND OR CORPS TO WHICH RESERVIST TRANSFERRED<br>TRANS TO USAR CON GP (REINF) USAAC ST LOUIS MO | | | 15. REENLISTMENT CODE<br>NONE |

| SERVICE DATA | 16. TERMINAL DATE OF RESERVE/UMT&O OBLIGATION<br>DAY  MONTH  YEAR<br>NA | 17. CURRENT ACTIVE SERVICE OTHER THAN BY INDUCTION<br>a. SOURCE OF ENTRY:<br>☐ ENLISTED (First Enlistment) ☐ ENLISTED (Prior Service) ☐ REENLISTED<br>☒ OTHER  APPOINTED WARRANT OFFICER | | 18. TERM OF SERVICE (Years)<br>NA | 18b. DATE OF ENTRY<br>DAY 1  MONTH AUG  YEAR 67 |
|---|---|---|---|---|---|
| | 18. PRIOR REGULAR ENLISTMENTS<br>NONE | 19. GRADE, RATE OR RANK AT TIME OF ENTRY INTO CURRENT ACTIVE SVC<br>WO-1 | 20. PLACE OF ENTRY INTO CURRENT ACTIVE SERVICE (City and State)<br>FT HOLABIRD, MD | | |

| | 21. HOME OF RECORD AT TIME OF ENTRY INTO ACTIVE SERVICE (Street, RFD, City, County, State and ZIP Code)<br>1819 TILTON DR<br>SILVER SPRING, MARYLAND | 22. | STATEMENT OF SERVICE | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|---|
| | 22a. SPECIALTY NUMBER & TITLE<br>062B0<br>HELICOPTER PILOT | b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER<br>0-41.10 AIRPLANE<br>PILOT, COMM | a. CREDITABLE FOR BASIC PAY PURPOSES | (1) NET SERVICE THIS PERIOD | 2 | 6 | 6 |
| | | | | (2) OTHER SERVICE | 4 | 0 | 9 |
| | | | | (3) TOTAL (Line (1) plus Line (2)) | 6 | 6 | 15 |
| | | | b. TOTAL ACTIVE SERVICE | | 6 | 6 | 15 |
| | | | c. FOREIGN AND/OR SEA SERVICE | SEE ITEM 30 | — | — | — |

23. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED

NDSM, AR AV BDE, AOM (BERLIN), GCMDL (1ST AWD), VSM, ARCOM, AM W/V DEV, BSM,
2 O/S BAR, DFC, AM (1ST-6TH OLC), PH

24. EDUCATION AND TRAINING COMPLETED

MILITARY JUSTICE          USAPHS - WORWAC 67-11 - 16 WKS, 67
CODE OF CONDUCT           USAAVNS - WORWAC 67-11 (062B) - 21 WKS, 67
CBR TNG
BTL INDOC
MIL COURTESY
GEN CONVEN

| VA AND EMP. SERVICE DATA | 25a. NON-PAY PERIODS TIME LOST (Preceding Two Years)<br>NA | 26. DAYS ACCRUED LEAVE PAID<br>57 | 27a. INSURANCE IN FORCE (NSLI or USGLI)<br>☐ YES  ☒ NO | b. AMOUNT OF ALLOTMENT<br>NA | c. MONTH ALLOTMENT DISCONTINUED<br>NA |
|---|---|---|---|---|---|
| | | 28. VA CLAIM NUMBER<br>c. NA | 29. SERVICEMEN'S GROUP LIFE INSURANCE COVERAGE<br>☒ $10,000  ☐ $5,000  ☐ NONE | | |

| REMARKS | 30. REMARKS<br>ITEM 5A - TEMP CW2 AUS APTD 1 AUG 68 PERM WO-1 USAR APTD 1 AUG 67<br>HS - GED - 1963<br>BLOOD GROUP: O<br>ITEM 22C - 33 MOS 63-66 GERMANY: 12 MOS 68-69 VIETNAM; 8 MOS 69-70 GERMANY |
|---|---|

| AUTHENTICATION | 31. PERMANENT ADDRESS FOR MAILING PURPOSES AFTER TRANSFER OR DISCHARGE (Street, RFD, City, County, State and ZIP Code)<br>1819 TILTON DR<br>SILVER SPRING, MARYLAND | 32. SIGNATURE OF PERSON BEING TRANSFERRED OR DISCHARGED<br>*[signature]* |
|---|---|---|
| | 33. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER<br>WILLIAM CHASEY CPT INF ACTING ASST ADJ<br>USA TRF STA FT DIX NJ | 34. SIGNATURE OF OFFICER AUTHORIZED TO SIGN<br>*[signature]* |

DD FORM 214
1 JUL 66

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE EFFECTIVE 1 JAN 67

☆ GPO: 1969-351-112

ARMED FORCES OF THE UNITED STATES
REPORT OF TRANSFER OR DISCHARGE

2

15

Compared to other anxiety disorders, posttraumatic stress disorder (or PTSD) is a "young" diagnosis. Although people throughout history have recognized that the experience of a traumatic event can have a major impact on the mind and body, it was not until 1980 that the diagnosis of PTSD (as we know it today) came to be.

PTSD is characterized by the development and persistence of a variety of symptoms following direct or indirect (i.e., witnessing) exposure to a traumatic event where fear, helplessness, and/or horror is experienced, as well as actual or threatened death or serious injury. The symptoms of PTSD are distributed across three separate clusters of symptoms described as re-experiencing (e.g., frequently having upsetting thoughts or memories about a traumatic event, experiencing nightmares and/or flashbacks), avoidance (e.g., trying to avoid thoughts, feelings, or reminders of a traumatic event, numbing of emotions), and hyperarousal (e.g., having sleep problems, irritability, hypervigilance, heightened startle response) symptoms (APA, 1994).

Recent estimates suggest that, within the general population, approximately 4% of people have a current (in the past year) diagnosis of PTSD (Kessler, Ciu, Demler, Merikangas, & Walters, 2005). However, rates of PTSD are generally much higher among military populations. For example, the National Vietnam Veterans Readjustment Study found that 15% of male and 9% of female Vietnam Theater Veterans had a current PTSD diagnosis (Kulka et al., 1990). Similar rates have been found among Persian Gulf War veterans (see Stimpson, Thomas, Weightman, Dunstan, & Lewis, 2003), and recent studies are showing that as many as 17% of Operation Enduring Freedom/Operation Iraqi Freedom veterans may meet criteria for PTSD (Hoge, Terhakopian, Castro, Messer, & Engel, 2007). Although concerning, these rates are not entirely surprising, as the diagnosis of PTSD originates from observations of the effect of combat on soldiers. In fact, the grouping of symptoms that we now refer to as PTSD has previously been described as "combat fatigue," "shell shock," or "war neurosis" (Keane & Barlow, 2002). It is also important to remember that PTSD among military personnel does not stem solely from combat exposure. Despite the fact that combat exposure is a primary source of PTSD, military service provides a variety of opportunities for traumatic exposure, including military sexual trauma and exposure to death and dying.

Although much research has been conducted on PTSD since the inception of this diagnosis, studies on the rates of PTSD, associations between PTSD and other problems (such as substance use), and the best way of determining a PTSD diagnosis do not really capture the immense pain and suffering experienced by people who have PTSD, nor do they convey the myriad of ways in which PTSD may change someone's life or the life of that person's loved ones. These studies also do not fully convey the long-term struggle that many people with PTSD experience. Finally, no studies can fully capture the strength, courage, and resilience exhibited by those with a PTSD diagnosis. No research has been able to capture the meaning of PTSD for the individuals and families who live with it everyday. However, the powerful writings in *Castrated Hearts* capture all of this.

*Castrated Hearts* is an impressive undertaking that puts a human face on the PTSD diagnosis. The writings in this book tell stories of loss, pain, and struggle, as well as resilience and courage. These writings also make it quite clear that PTSD does not discriminate based on age, gender, or race. The writings presented in this book come from men and women of all ages, racial/ethnic

backgrounds, ranks, and branches of service. The events that the authors reference in regard to their PTSD also differ, providing a glimpse into the complex and unforgiving nature of this diagnosis.

The honesty and openness with which the authors express their emotional experiences is admirable, and a testimony to their courage and resilience. As you progress through the writings, it is hard to not be taken aback by what they have experienced, and yet also impressed with their fortitude and deeply touched by their willingness to share their stories. The book also clearly shows that, even in the face of such a difficult diagnosis, recovery is possible. *Castrated Hearts* is an important book that can increase awareness and understanding of PTSD and its far-reaching effects. It will validate the experiences of and provide hope for those living with PTSD, as well as those with a loved one who has PTSD. *Castrated Hearts* ensures that the authors' service, sacrifice, and strength will not be forgotten.

Matthew T. Tull, Ph.D.
Assistant Professor and Director of Anxiety Disorders Research
Department of Psychiatry and Human Behavior
University of Mississippi Medical Center

References:

American Psychiatric Association (1994). *Diagnostic and statistical manual of mental disorders, 4th edition.* Washington, D.C.: Author.

Hoge, C. W., Terhakopian, A., Castro, C. A., Messer, S. C., & Engel, C. C. (2007). Association of posttraumatic stress disorder with somatic symptoms, health care visits, and absenteeism among Iraq War veterans. *American Journal of Psychiatry, 164,* 150-153.

Keane, T. M., & Barlow, D. H. (2002). Posttraumatic stress disorder. In D. H. Barlow (Ed.), *Anxiety and its disorders, 2nd edition* (pp. 418-453). New York, NY: Guilford Press.

Kessler, R. C., Chiu, W. T., Demler, O., Merikangas, K. R., Walters, E. E. (2005). Prevalence, severity, and comorbidity of twelve-month DSM-IV disorders in the National Comorbidity Survey Replication (NCS-R). *Archives of General Psychiatry, 62,* 617-627

Kulka, R. A., Schlenger, W. E., Fairbank, J. A., Hough, R. L., Jordan, B. K., Marmar, C. R., & Weiss, D. S. (1990). *Trauma and the Vietnam war generation: Report of findings from the National Vietnam Veterans Readjustment Study.* New York, NY: Brunner/Mazel.

Stimpson, N. J., Thomas, H. V., Weightman, A. L., Dunstan, F., & Lewis, G. (2003). Psychiatric disorder in veterans of the Persian Gulf War of 1991. *British Journal of Psychiatry, 182,* 391-403.

August 29, 2010

To Honorable Judge Phillips

Your honor, I Belen M Aragon is Harold Meza's oldest sister. We are a family of 7 which are all very proud of Harold's accomplishments in life, He has always been very helpful in helping out people in need and very supportive of all family members as well.

Harold has made some great accomplishments in his life, the military service, stopped drinking, smoking and cleaned up his use of profanity, He has done major changes in his life especially with the help of his therapy sessions. It would be great for him to be able to continue.

Your honor, Our mother is going on 86 yrs of age, We would like to see her happy having Harold home, Her health is slowly deteriorating.

Thank you for your consideration

Belen M Aragon

10

To whom it may concern:

It is with great honor that I write in recommendation of Harold Meza. I've known him for more than 12 years. He is my uncle but more importantly he is my friend. He's an honest, caring, and selfless man. He gives and helps without asking for anything in return. He's a great husband. Harold is a valuable member of this family. Our family has become much closer since Harold became a part of it. He has the uncanny ability to speak his mind but always remain respectful. Times were tough for the whole family during the loss of my grandmother, Irene Walker, but Harold was able to stay strong and he pulled us together. He always has something clever to say, which keeps me laughing. I enjoy his company and his advice. He is a great man. For many reasons I admire and appreciate him.

Sincerely,
Mario Garcia

August 25, 2010


TO:        Honorable Judge Phillips

FROM:      Alex and Carmen Hernandez
           27701 Murrieta Rd. #66
           Sun City, CA  92586


SUBJECT:   Harold Meza


We have known Hal for almost seventeen years.  During this time, we have shared many
social events, charitable functions and family get togethers.  He has been very generous
with his time as an upstanding citizen in his community as well as in the military
community.  We have every reason to believe that Hal will continue with his efforts in
helping people less fortunate than he given the time and opportunity.  He is very proud of
his military record but also know that it affected him after returning from being overseas.
We were at a Christmas function in December of 1994 when we realized Hal was having
somewhat of a meltdown when reminded of his time in Vietnam.  We were all very
concerned because he has always been a strong and sincere person within our group of
friends.  Hal risked his life for us in the military and deserves a chance to live the rest of
his life in peace.  We appreciate any consideration based on the upstanding part of his
life.  Thank you.


cc:     David Macher, Attorney at Law


20

August 30, 2010


To Whom It May Concern:


We have known Harold Meza for over 20yrs. We meet him back in March of 1988 and at

that time he was in Real Estate and sold us our home in Apple Valley. Over the years we

have become very close friends and found out what a great, respectable and sincere individual

that he is. Both my son and daughter went through some serious medical issues and had to

be in the hospital. Mr. Meza showed his conerns by giving us alot of moral support.


Sincerely,

Ray & Liz Fuentes

16498 Chippewa Rd

Apple Valley, Ca.92307

## CERTIFICATE OF SERVICE

I, David Joseph Macher, hereby declare:

I am over the age of 18 years, and am not a party to the present action.

On September 21, 2010, I electronically served the document entitled **Sentencing Position of Defendant Harold Meza** with the Clerk of the Court using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on September 21, 2010, at Murrieta, California.

David Joseph Macher